UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER KENNETH BOWLING,

Petitioner,

v.

JEFFREY TANNER,

Respondent.

Case No. 18-10276
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]**

Petitioner Roger Kenneth Bowling is a state prisoner incarcerated at Macomb Correctional Facility in Lenox Township, Michigan. Following a jury trial in the Wayne County Circuit Court, he was convicted of two counts of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); two counts of mutilation of a dead body, Mich. Comp. Laws § 750.160; one count of tampering with evidence, Mich. Comp. Laws § 750.483a(6)(b); and two counts of possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. His convictions were affirmed on direct appeal. He then filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court challenging his convictions. Having reviewed Bowling's petition, the warden's response, and the state court record, the Court concludes that Bowling's claims are without merit. Thus, Bowling's petition is DENIED.

## I.

Bowling was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1)*; Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's murder convictions arise from the shooting deaths of Danielle Greenway and Christopher Hall in Allen Park in July 2012. Greenway died from a single gunshot wound to the head. Hall died of multiple gunshot wounds. Their bodies were dismembered and body parts were cast into the Detroit River. Hall's sister went to the victims' home on July 18, 2012, because Hall had not responded to her attempts to contact him. Defendant, whom Hall's sister had not seen before, was present in the home and said he had been staying there as a house guest. He stated that he did not know where the victims had gone, but he thought they might have gone up north. The police obtained a search warrant for the home and discovered areas with blood and bullet holes, and there were indications that blood had been cleaned from other areas. Defendant told the police that he was out for a bicycle ride at the time the victims left their home, but the only bicycle on the premise was covered with cobwebs and substantial dust.
>
> Defendant's trial was adjourned multiple times, mostly for reasons related to discovery, expert analysis of DNA evidence, cell phone records, and ballistics and fingerprint evidence, and review of more than one thousand photographs. On July 28, 2014, two weeks before trial was scheduled to begin, defendant wrote a letter to the assigned judge, Judge Ulysses Boykin, and filed a pro se motion for another adjournment. Defendant asserted that he needed more time to review the evidence and plan his defense. He complained that appointed counsel, Henry Greenwood, and appointed co-counsel, Luther Glenn, were not prepared, and he criticized Greenwood for failing to move for a *Walker*[1] hearing to determine whether defendant's police statement was voluntarily given. The case was reassigned to a visiting judge, Judge Brian Levy, but in the interim his motion to adjourn was heard by Judge Timothy Kenny. In a letter to Judge Kenny, dated August 5, 2014, defendant reiterated his reasons for requesting an adjournment. Defendant complained about

[1] *People v. Walker*, 374 Mich. 331, 336–339; 132 NW2d 87 (1965) (footnote in original).

> Greenwood's lack of preparation and motivation. He made references to dissatisfaction with appointed counsel but also complained about untimely discovery, alleged judicial bias, and a lack of resources at the Wayne County Jail that interfered with his ability to prepare for trial. Judge Kenny denied the motion for an adjournment. On the first day of trial, defendant again raised his concerns with Judge Levy, who also denied an adjournment.

*People v. Bowling*, No. 324006, 2016 WL 1039700, at *1 (Mich. Ct. App. Mar. 15, 2016).

The Court adds the following facts from the trial court record. At trial, Robert Soick, a longtime acquaintance of Bowling, testified that he knew Bowling since first grade and lived with him for a few months around 2003–2004. (ECF No. 25-22, PageID.1411–1415.) He testified that around the time they were living together, they would occasionally drink and talk about "getting rid of" their exes. (*Id.* at PageID.1414.) He said Bowling was "obsessive" with Greenway and told Soick multiple times that he would "cut her up and put her in a cooler, and chain [the cooler] up . . . and dump her body in the lake." (*Id.* at PageID.1414–1415.) He also testified that Bowling was "very upset" that Greenway was in a relationship with another man. (*Id.* at PageID.1415.) On July 19, 2012, after learning that Greenway's body had been found, Soick contacted police to inform them what Bowling had said to him about killing Greenway seven or eight years earlier. (*Id.* at PageID.1416–1417.)

A Wayne County Circuit Court jury convicted Bowling of two counts of first-degree premeditated murder, two counts of mutilation of a dead body, one count of tampering with evidence, and two counts of possession of a firearm in the commission of a felony. (ECF No. 25-42, PageID.3609.) He was sentenced on October 1, 2014, to two life sentences without parole. (ECF No. 25-35, PageID.3002.) The Michigan Court

of Appeals affirmed his conviction on direct appeal. *Bowling*, 2016 WL 1039700, at *4. On October 26, 2016, the Michigan Supreme Court denied leave to appeal. *People v. Bowling*, 886 N.W.2d 171 (Mich. 2016).

On January 22, 2018, Bowling filed a habeas petition in this Court raising the following six claims:

1. Denial of Sixth Amendment right to "conflict-free assistance of counsel when the court refused to make an inquiry into Petitioner's numerous and specific complaints with appointed counsel's representation";
2. Denial of Sixth Amendment right to "self-representation by failing to acknowledge or rule on Petitioner's unequivocal requests to proceed pro se";
3. Denial of Sixth Amendment right to assistance of counsel and Fourteenth Amendment right to due process and a fair trial "when the court forced Petitioner to go to trial with an admittedly unprepared attorney and prevented Petitioner from obtaining a ruling on, or making a record of, the requests presented to the court";
4. Denial of Sixth Amendment right to counsel "when the trial court prevented Petitioner from conferring with counsel during trial and prevented Petitioner from consulting privately with counsel during breaks in the trial";
5. Denial of Sixth Amendment right to confrontation and Fourteenth Amendment right to due process "when a hearing was held outside Petitioner's presence related to counsel's unpreparedness for trial"; and
6. Denial of Sixth Amendment right to effective assistance of counsel on appeal "when appellate counsel failed to investigate and raise significant and potentially meritorious arguments and provided inaccurate procedural information that prevented Petitioner from raising these issues in a supplemental brief."

(ECF No. 1, PageID.5, 7, 8, 10–11, 13.)

When he first filed this petition, Bowling had only exhausted the first three claims in state court. (ECF No. 2.) So he filed an application to hold the petition in abeyance so that he could return to state court to exhaust the other three claims.

(ECF No. 2, PageID.24–25.) On March 31, 2018, the Court granted the application to hold the petition in abeyance and administratively closed this case. (ECF No. 5.) The Court ordered Bowling to file an amended habeas corpus petition and a motion to re-open his case within 90 days of exhausting his state remedies if he was unsuccessful in state court and wished to return to federal court. (*Id.* at PageID.41.)

Bowling then returned to state court. He filed a post-conviction motion for relief from judgment with the Wayne County Circuit Court, which was denied. (ECF No. 25-38.) The trial court subsequently denied Bowling's motion for reconsideration. (ECF No. 25-40.) He challenged that decision by filing an application for leave to appeal with the Michigan Court of Appeals, which was also denied. (ECF No. 25-42, PageID.3360.) The Michigan Court of Appeals similarly denied Bowling's motion for reconsideration. (ECF No. 25-42, PageID.3354). The Michigan Supreme Court denied Bowling leave to appeal. *People v. Bowling*, 973 N.W.2d 142 (2022); *reconsideration den.* 977 N.W.2d 532 (2022).

On May 8, 2023, Bowling returned to this Court and requested that the Court reopen the case, asserting that he had properly exhausted all six of his claims in state court. (ECF No. 18.) The Court granted the motion and reopened this case on May 24, 2023. (ECF No. 19.) Respondent has filed an answer and the relevant Rule 5 materials. (ECF Nos. 24, 25.)

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribe[s]" the standard of review that federal courts apply when considering

an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings," unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As to the first ground, a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "certainly contrary" to federal law where the "state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 406.

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). The Supreme Court has emphasized that "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

(quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.

### A. Substitution of Counsel (Claim 1)

In Bowling's first claim, he argues that his Sixth Amendment right to counsel was violated when the trial judge refused to grant Bowling's request for substitute court-appointed counsel (ECF No. 1, PageID.5.)

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. An indigent defendant is entitled to appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963). However, "[a]n indigent defendant has no right to have a particular attorney represent him." *United States v. Jones*, No. 21-5493, 2022 WL 2375730, at *3 (6th Cir. June 30, 2022) (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)). So once counsel has been appointed, the defendant must show "good cause" to warrant substitution of counsel. *Id.* (citing *Iles*, 906 F.2d at 1130).

In deciding whether a state trial court unreasonably applied clearly established federal law when it denied a defendant's motion to substitute counsel, the following four factors control:

(1) the timeliness of the motion;

(2) the adequacy of the court's inquiry into the defendant's complaint;

> (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense; and
>
> (4) a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.

*Cobb v. Warden, Chillicothe Corr. Inst.*, 466 F. App'x 456, 460 (6th Cir. 2012).

"A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel." *Washington v. Cool*, No. 22-01634, 2025 WL 82141, at *13 (N.D. Ohio Jan. 13, 2025) (citing *Stein v. Sheldon*, No. 20-02722, 2023 WL 10354266, at *17 (N.D. Ohio Sept. 25, 2023)); *see also Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003) (explaining that mere "difference of opinion regarding trial strategy" "does not reveal an irreconcilable conflict or total lack of communication" sufficient to warrant good cause for substitution of counsel); *United States v. Jennings,* 83 F.3d 145, 149 (6th Cir. 1996) (explaining good cause is when the there is "a total lack of communication preventing an adequate defense.").

"Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Martel v. Clair*, 565 U.S. 648, 663–64 (2012).

The Michigan Court of Appeals concluded that Bowling's complaints about counsel were "intermingled with complaints about untimely discovery, judicial bias, and insufficient resources at the Wayne County Jail." *People v. Bowling*, 2016 WL 1039700, at *4. So it found his requests unclear and it also noted that he did not

specifically "move for substitution of counsel." *Id.* It also found his request, made two weeks before trial, not "timely." *Id.* This was not an unreasonable application of governing law.

To start, Bowling's request was interspersed among general complaints about his trial counsel's preparedness and strategy. (*See, e.g.*, ECF No. 25-13 ("I do not believe defense counsel is anywhere near ready to proceed to trial and I'm having doubts whether or not he ever will be." (Letter from Bowling to Judge Boykin 7/28/2014)); ECF No. 25-16 ("I need a new attorney assigned to represent me. If the court won't assign me a new attorney then I'd rather just go pro se. The issues between Mr. Greenwood and myself are numerous. We do not agree on trial strategy." (Letter from Bowling to Judge Boykin 8/2/2014)).) So to the extent Bowling unequivocally requested substitute counsel, the Michigan Court of Appeals correctly concluded that his request did not constitute good cause. That is, Bowling's concerns related to trial strategy and preparedness, not "a total lack of communication preventing an adequate defense." *Cobb*, 466 F. App'x at 460; *see also United States v. Powell*, 847 F.3d 760, 779 (6th Cir. 2017). ("'[A] defendant's differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense.").

Moreover, Bowling did not raise his concerns about Greenwood's representation until two weeks before the trial. *See People v. Bowling*, 2016 WL 1039700, at *4. And he points to no Supreme Court case that says failing to appoint new counsel this close to trial constitutes a Sixth Amendment violation, nor is the

Court aware of any such law. Indeed, the Sixth Circuit "has considered a request for new counsel made just days or weeks before trial to be untimely." *Powell*, 847 F.3d at 778 (citing *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999) (affirming district court finding that defendant's request for substitute counsel two weeks before trial was made too late)). Thus, the Michigan Court of Appeals did clearly err in finding Bowling's request for substitute counsel untimely.

**B. Forced to go to Trial with Unprepared Attorney (Claim 3)**

As a result of not being granted substitute counsel, Bowling argues that he was forced to go to trial with two attorneys who he considered unprepared (ECF No. 1, PageID.8.)

The Supreme Court has held that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). But Bowling has failed to point to any specific deficiencies in his counsel's representation at trial. And nothing before the Court suggests that Bowling's counsel did not represent him "adequately." Bowling has also failed to show how additional pretrial work would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F.3d 594, 607–08 (6th Cir. 2002); *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (a habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have

pursued and how such evidence would have been material to his or her defense). Bowling is not entitled to habeas relief on this claim.

**C. Right to self-representation (Claim 2)**

In his second ground for relief, Bowling argues that he was denied his right to self-representation. (ECF No. 1, PageID.7.) A criminal defendant has a constitutional right to conduct his own defense at trial if he elects to do so voluntarily and intelligently . *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). His request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also United States v. Martin,* 25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally.").

Where a defendant simply expresses dissatisfaction with his trial counsel's performance, a court should not interpret this as a motion by the defendant to proceed *pro se. See Martin*, 25 F.3d at 296. The Sixth Circuit has noted that "[i]t is well settled that there is no constitutional right to hybrid representation." *Cassano v. Shoop*, 1 F.4th 458, 471 (6th Cir. 2021) (quoting *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004)). Thus, a criminal defendant who seeks merely to supplement his defense counsel's representation, as Bowling attempted to do, "has failed to avail himself of his right to self-representation and thus failed to waive his Sixth Amendment right to the assistance of counsel." *Id.*

Bowling wrote several letters to the trial court and made statements on the first day of trial regarding his dissatisfaction with his defense counsel:

- "I do not believe defense counsel is anywhere near ready to proceed to trial and I'm having doubts whether or not he ever will be." (*See* ECF No. 25-13 (Letter from Bowling to Judge Boykin 7/28/2014));

- "Mr. Greenwood isn't prepared to try this case . . . I need a new attorney assigned to represent me. If the court won't assign me a new attorney then I'd rather just go pro se. The issues between Mr. Greenwood and myself are numerous." (ECF No. 25-16 (Letter from Bowling to Judge Boykin 8/2/2014));

- "I need an immediate adjournment and re-assignment of Judge . . . With a bit of time I can work out counsel one way or the other. . . . Please appoint a real attorney to represent me. Someone who cares about Justice, their client, and winning." (ECF No. 25-17 (Letter from Bowling to Judge Timothy Kenney));

- "I haven't received most of my discovery in this case yet, and numerous other problems." (ECF No. 25-19 (Trial transcript 8/11/2014)).

The Michigan Court of Appeals considered Bowling's letters and in-court statements. It concluded that "the record does not contain an unequivocal request by defendant to represent himself." *Bowling*, 2016 WL 1039700, at *2. It explained its reasoning:

> Defendant's only positive requests were for an adjournment and assignment to a different judge. Defendant made two references to self-representation in his August 5, 2014 letter. These were: "It's looking like *I may just have to* hold a *Walker* hearing and fight my case pro-se," and "[t]that's why I said *I may have to go pro-se*." (Emphasis added.) These statements expressed a possibility that defendant might exercise his right to self-representation if his concerns about Greenwood's competency were not resolved. Defendant's statement that he "may" have to exercise his right to self-representation referred to self-representation as a future option he was contemplating, not as a present demand.

*Id.* at *3. This was not based on an unreasonable application of Supreme Court law.

Bowling did not clearly and unequivocally ask to represent himself. He expressed dissatisfaction with his counsel and raised *pro se* representation as a

possibility, not a demand. Such statements did not invoke his right to self-representation.

Moreover, the mere fact that Bowling attempted to file *pro se* motions on his behalf does not constitute a clear and unequivocal invocation of his right to self-representation. As discussed, "[a] defendant in a criminal case does not have a constitutional right to hybrid representation." *Hudson v. Larson*, No. 13-12254, 2015 WL 1912577, at *5 (E.D. Mich. Apr. 27, 2015) (citing *United States v. Cromer*, 389 F.3d 662, 681 n. 12 (6th Cir. 2004)). Because asserting the right to self-representation "necessarily involves a waiver of the constitutional right to counsel," courts require "a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Nelson v. Jackson*, No. 16-12260, 2016 WL 6441287, at *9 (E.D. Mich. Oct. 31, 2016) (quoting *Cromer,* 389 F.3d at 682–83)). So any motions he filed *pro se* while still maintaining his legal counsel necessarily did not invoke his right to self-representation.

Thus, Bowling's claim that he was denied the right to self-representation does not warrant relief.

### D. Procedural Default

A habeas petitioner procedurally defaults a claim when "(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim." *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (citing *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017)). "[A] federal court may

not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017).

Courts may "forgive a procedural default when a prisoner demonstrates 'cause for the default' and 'actual prejudice as a result of the alleged violation of federal law.'" *Gaither v. Lane*, No. 24-5942, 2026 WL 698161, at *4 (6th Cir. Mar. 12, 2026) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "A showing of cause requires more than the mere proffer of an excuse." *Lundgren v. Mitchell*, 440 F.3d 754, 763–64 (6th Cir. 2006). Instead, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren*, 440 F.3d at 764.

Michigan Court Rule 6.508(D)(3) bars post-conviction relief for claims that could have been raised, but were not, unless the party shows good cause for the failure to raise and actual prejudice. Several of Bowling's claims were procedurally defaulted during his state court appeal. Here, the Michigan Supreme Court rejected Bowling's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bowling*, 973 N.W.2d 142 (2022). The Michigan Court of Appeals denied Bowling's post-

conviction appeal "because the defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Bowling,* No. 354545 (Mich. Ct. App. Oct. 23, 2020); (ECF No. 25-42, PageID.3360). These orders, however, did not refer to subsection (D)(3) nor did they mention Bowling's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Bowling's claims. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

That would be the Wayne County Circuit Court opinion denying Bowling's post-conviction motion. In that opinion, the trial judge rejected claims that Bowling raised for the first time in his post-conviction motion, finding Bowling had not "demonstrated 'good cause' for failing to raise the above issues in a prior motion or appeal, nor has he demonstrated 'actual prejudice' from any of these alleged irregularities." (ECF No. 25-38, PageID.3182 (quoting Mich. Comp. Rules 6.508(d)(3), 6.508(D)(3)(a–b)). Bowling advances various arguments to avoid procedural default of claims he failed to raise on direct appeal. The Court addresses each in turn.

**1. Right to Confer (Claim 4)**

Start with Bowling's claim that the courtroom's seating arrangement prevented him from conferring with his counsel during the trial and meant that he was forced to confer with counsel in a noisy, crowded holding area. The trial court found Bowling did not "explain[n] what, if anything, he would have said to his counsel that would have made a difference in the outcome of his trial." (ECF No. 25-38,

PageID.3180.) It also noted that "nothing prevented [Bowling] from communicating with his counsel by written notes." (*Id.*) So it concluded there was no good cause that would overcome the procedural default. Bowling has not presented any argument to the contrary.

**2. Right to be Present (Claim 5)**

As to Bowling's claim that a hearing regarding counsel's unpreparedness for trial was held outside of his presence (Claim 5), the court concluded that he "forfeited the alleged error by failing to object to his absence prior to the conclusion of the trial." (ECF No. 25-38, PageID.3178.) This is an adequate procedural rule and, for the reasons already stated, Bowling has not shown any prejudice as a result of not getting a new lawyer in his trial. The court also explained that the "right to be present refers only to the trial and any proceeding that might adversely affect a defendant's substantial rights" (*id.* at PageID.3178) and that "nothing in the transcript of this proceeding indicates that [his] substantial rights were affected." (*Id.* at PageID.3179.)

So this claim was procedurally defaulted and will not be reviewed by this Court.

**E. Ineffective Assistance of Appellate Counsel (Claim 6)**

Finally, Bowling raises an ineffective assistance of appellate counsel claim (Claim 6), that "appellate counsel failed to investigate and raise significant and potentially meritorious arguments and provided inaccurate procedural information that prevented [him] from raising these issues in a supplemental brief." (ECF No. 1, PageID.13.)

This claim is not procedurally defaulted because state post-conviction review was the first opportunity that Bowling had to raise this claim. *See Guilmette,* 624 F.3d at 291.

To establish ineffective assistance of counsel, Bowling must demonstrate that (1) his counsel's performance was so deficient that the attorney did not function as "counsel" guaranteed by the Sixth Amendment and (2) that such performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, there is a presumption that, under the circumstances, the challenged action might be sound strategy. *Id.* at 689. And as to the prejudice prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* standard applies "regardless of whether a Petitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *3 (6th Cir. Mar. 23, 2018) (quoting *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005)).

Importantly, where, as here, the Wayne County Circuit Court addressed the ineffective assistance claim on the merits in Bowling's post-conviction motion for relief from judgment (*see* ECF No. 25-38, PageID.3181), "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). So a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

Bowling argues that his appellate counsel did not raise the most "meritorious arguments" on appeal. (ECF No. 1, PageID.13.) It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Id.* at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record

and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Bowling has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance. His appellate counsel raised what now amounts to the first three claims that Bowling raises in this petition. *See People v. Bowling*, 2016 WL 1039700, at *2. Bowling has not shown that his appellate counsel's strategy in presenting these claims and not raising other claims—*i.e.*, the claims in his post-conviction motion for relief from judgment—was deficient or unreasonable. Moreover, for the reasons stated by the respondent in the answer to the petition for writ of habeas corpus, none of the claims raised by Bowling in his post-conviction motion were "dead bang winners." (ECF No. 24, PageID.204–208.)

Bowling also argues that appellate counsel was ineffective for failing to assist him in preparing a *pro se* Standard 4 supplemental brief on Bowling's behalf to raise these additional claims.[2] But there is no "constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). This is because the Sixth Amendment protects the right to prepare for and perform at trial, not the right to appeal. *Kansas v. Ventris*, 556 U.S. 586, 129 (2009); *Martinez*, 528 U.S. at 160 ("The Sixth Amendment does not include any right to appeal."). In fact, since Bowling

[2] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594n.6 (E.D. Mich. 2008).

"accept[ed] the assistance of counsel [on direct appeal], [he] waive[d] his right to present *pro se* briefs on direct appeal." *Agar v. Bartrand*, No. 25-13594, 2026 WL 711288, at *3 (E.D. Mich. Mar. 13, 2026) (citing *Myers v. Johnson*, 76 F. 3d 1330, 1335 (5th Cir. 1996)). Thus, any failure by appellate counsel to submit a *pro se* brief on Bowling's behalf does not present a constitutional question that would entitle him to habeas relief.

**IV.**

For the foregoing reasons, the Court DENIES Bowling's Petition for Writ of Habeas Corpus (ECF No. 1).

IT IS SO ORDERED.

Dated: September 17, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE